RANDOLPH ET AL., ADMINISTRATOR, ETC., V. HELPS ET AL.

| 9 | 29 |
|---|---|
| 12 | 70 |
| 9 | 29 |
| 9a | 180 |
| 9 | 29 |
| 32 | 88 |
| 9 | 29 |
| f37 | 211 |

1. This court cannot proceed upon conjecture, and by implication add a provision to a lease which defeats the leasehold estate granted by express terms.

2. It is a familiar rule that extrinsic evidence is not admissible, either to contradict, add to, subtract from, or vary the terms of a written instrument. The rule applies with greater force to all instruments required, by the statute of frauds, to be in writing.

3. As to a writing not within the statute of frauds, where the effect of a defeasance is claimed for a provision in an instrument the same rule applies.

4. Where the words of a contract are free from ambiguity in themselves, and no doubt or difficulty arises as to their meaning or application, they are to be construed and applied in their plain and general acceptation.

5. All oral negotiations or stipulations between the parties which preceded or accompanied the execution of the instrument are to be regarded as merged in it, and the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves. Parol evidence is admissible to explain and apply the writing, but not to add to it or vary its terms.

*Error to District Court of Boulder County.*

THE complaint alleges that on October 6, 1881, William Stimson was the owner in fee of southwest quarter section 21, township 1 south, range 70 west, in the county of Boulder, Colorado; that on said day he leased the same to the defendants for the purpose of mining for coal, and

defendants took possession of the same; that by the terms of the lease it was provided that if said Stimson should sell the leased premises during the term of the lease, the said Stimson should pay to the defendants the value of all improvements placed upon said premises, and that the defendants should deliver up said premises to said Stimson or his vendee, and that the term of the lease should then terminate; that said Stimson sold the premises leased June 7, 1882, to the plaintiff; that he immediately gave notice thereof to the defendants, and offered to make the appraisement called for by the terms of the lease, and to pay to defendants the value of the improvements made by them; that the defendants refused to receive the value of their improvements and refused to surrender up the possession of the premises, either to Stimson or to the plaintiff, his grantee; that the value of his improvements is $200; that the said Stimson and the plaintiff are willing and offer to pay for the same; that both Stimson and the plaintiff have demanded in writing, of the defendants, the possession of the said premises, but defendants refuse to deliver possession of the same, and unlawfully hold over, contrary to the statute; that the use and occupation of the said premises is of the monthly value of $100; that plaintiff is damaged by the detention $100 per month. Plaintiff prays for judgment for the restitution of the premises, for $2,000 for use and occupation thereof, for damages, and for costs of suit. The answer admits the ownership of Stimson, and the leasing of the premises as alleged in the complaint; admits that defendants took possession of the same, and alleges that the lease was in writing; denies that they ever entered into any lease with a provision for a forfeiture in case the lessor should sell the premises, or into any lease containing the stipulations as alleged by the plaintiff; that the term of existence of said lease was not contingent on the sale of the premises by the lessor, and that no sale authorized the plaintiff to obtain posses-

sion of the premises, and the lease was never so under-
stood by the parties thereto.   *   *   *   Replication by
the plaintiff.   Trial to the court, and judgment of non-
suit.

Messrs. R. H. WHITELY, WRIGHT and GRIFFIN and R.
D. THOMPSON, for plaintiffs in error.

Mr. G. BERKLEY, for defendants in error.

ELBERT, J.   The complaint alleges "that by the terms
of the lease it was provided that, if Stimson should sell
the leased premises during the term of the lease, the said
Stimson should pay to the defendants the value of all
improvements placed upon the premises, and that the
defendants should deliver up the premises to Stimson, or
his vendee, and that the term of the lease should then
terminate."   The only provision of the lease pertaining
to this issue is as follows:

"And it is further stipulated and agreed by the second
party that if the first party should sell or dispose of his
interest in said premises, said first party shall pay to
said second party the appraised value of all the improve-
ments of said second party on said premises, and, in
the event of said appraisement, each of the two parties
to this contract are to appoint a disinterested man; and
if said two men cannot agree on the price of said im-
provements, said two men are to choose a third man,
and a decision of a majority of said three men is to be
the price of said improvements."

Construing this provision according to the settled rules
applicable to the case,— collecting the intention from the
context and words used,— it cannot be said that it was
agreed between the contracting parties that the lease
was to terminate upon the sale of the leased premises by
the lessor.   We find, by its terms, a plain and unambig-
uous provision for the appraisement of the improvements
on the leased premises in case of sale, and for the pay-

ment of the appraised value by the lessor; but there is nothing·in its terms to the effect that the lessees, in case of sale, shall deliver up the premises to Stimson or his vendee, or that the term of the lease shall terminate. If such was the intention of the contracting parties, they did not express it in their written contract; nor is there any attempt to express such an agreement. It is not the case of an imperfect expression of intention, but one of entire omission, if the intention existed. Payment for the improvements in case of sale may seem unusual, without surrender of the lease, but we cannot say that a surrender is necessarily implied from such a provision. Some very different consideration, known to the parties and unknown to us, may have influenced them. We cannot proceed upon conjecture, and by implication add a provision to the lease which defeats the leasehold estate granted by its express terms. On its face, it is an entire contract, and purports to express fully the intention of the parties.

On the trial below "the plaintiff offered to prove, in support of the lease, that the declared intention of the parties at the time, in using the language set forth in the lease, was that upon a sale of the property by Stimson the possession was to be delivered to Stimson, or his vendee." The language of the offer, taken in connection with the terms of the provision, leaves it in doubt whether the purpose was to explain the language used in the lease, or to show a contemporaneous parol understanding. It was not admissible for either purpose in this case. It is a familiar rule that extrinsic evidence is not admissible, either to contradict, add to, subtract from, or vary the terms of a written instrument. The rule applies with greater force to all agreements required by the statute of frauds to be in writing; but, as the effect of a defeasance is claimed for the provision, we apply the rule as to a writing not within the statute of frauds and say: (1) Where the words of the contract are free from ambiguity

in themselves, and no doubt or difficulty arises as to their meaning or application, they are to be construed and applied in their plain and general acceptation. Written instruments would be of but little value if evidence *dehors* were admissible to show an intention different from the plain intention expressed by unambiguous words. The language of a contract is the agreed repository of the intention of the parties, and from it, when free from ambiguity, they cannot be allowed to appeal to the less certain testimony of witnesses. 2 Phil. Ev. *634. (2) All oral negotiations or stipulations between the parties which preceded or accompanied the execution of the instrument are to be regarded as merged in it, and the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves. Parol evidence is admissible to explain and apply the writing, but not to add to it or vary its terms. 2 Phil. Ev. *666, *667. In a direct proceeding for that purpose, upon a proper and sufficient showing, a court of equity has the power to reform this instrument in case of fraud or mistake, but, until so reformed, it must stand as the agreement of the parties, and be interpreted by the plain language which they have used. The judgment of the court below is affirmed.

*Affirmed.*