[No. 4409.]

NESMITH v. MARTIN.

1. Contracts—Evidence—Oral Evidence to Vary Written Contract—Statute of Frauds.

Extrinsic oral evidence is not admissible to contradict, add to, subtract from or vary the terms of a written contract, and the rule applies with greater force to contracts required by the statute of frauds to be in writing.

2. Contracts—Trusts—Evidence—Statute of Frauds.

To establish a trust by oral evidence alone, in order to take

the case out of the statute of frauds, the contract must be established by clear, certain and conclusive proof, unequivocal in all its terms.

### 3.  Sales—Options—Water Rights—Estoppel.

Where the locator of certain mining claims gave an option to purchase the same and the purchaser located a water right and constructed a pipe line part of which was constructed through the property covered by the option, and before executing the contract of option the purchaser told the seller he was going to construct the pipe line for his own benefit and if he failed to purchase under the option he would sell the pipe line to the highest bidder and the pipe line was not mentioned in the contract, the owner of the claims will not be heard to say that the pipe line became his property upon the expiration of the option.

*Appeal from the District Court of San Juan County.*

Mr. REESE McCLOSKEY, Mr. THOS. A. DICKSON and Mr. WM. H. DICKSON, for appellant.

Mr. B. W. RITTER, for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court.

The plaintiff, claiming to be the owner of a certain pipe line, together with the head-gate of said pipe line, on the Animas river, and the right to use water from the Animas river by and through the said pipe line, and claiming to be in the possession thereof, brought suit in the district court of San Juan county, where the property is situated, to quiet his title thereto, alleging that the defendants claimed some right or title therein. The defendants answered and denied that the plaintiff was the owner of said water right and pipe line, or that he was in the lawful possession thereof, and in a cross-complaint alleged that the plaintiff had unlawfully taken possession of said pipe line in the temporary absence of the defendant, that the said pipe line was the property of the defendant, John W. Nesmith, that the pipe line had been con-

structed by him with his own money, with the knowledge and consent of the plaintiff. In an answer to the cross-complaint, the plaintiff sets up a contract and agreement between himself and J. W. Nesmith, which, he claims, was entered into between the parties on the 2nd of September, 1899, and alleges that the said J. W. Nesmith holds the said property as a trustee for the use and benefit of him, the plaintiff, and further, that the said pipe line is constructed across the property of the plaintiff and that under the written contract entered into between the plaintiff and the defendant, Nesmith, it was agreed that the said pipe line should become the property of the plaintiff in the event that the said defendant, Nesmith, did not purchase the mining property under the agreement. The material matters of the answer to the cross-complaint are denied in the replication.

The trial was to the court, without a jury, and resulted in judgment in favor of the plaintiff, and the plaintiff was decreed to be the owner of the water right and the pipe line mentioned in the pleadings. From the judgment the defendant appealed to this court.

From the testimony of the plaintiff it appears that he and J. W. Nesmith entered into a verbal agreement on the 2nd of September, 1899, and the court permitted the plaintiff to introduce in evidence a memorandum of the agreement made, as he alleges, at the time the agreement was entered into; the memorandum being as follows:

"GRAND HOTEL,
SILVERTON, COLORADO, Sept. 2, 18—.

"Preliminary agreement between John W. Nesmith and S. G. Martin. Nesmith agrees to buy Tom Moore group of mines lease and bond. $4,000 cash; $10,000 in twelve months; $10,000 in two years;

$200 paid to bind bargain. Agrees also to protect water right and return same to Martin if contract on mines is not complied with or forfeited.

'S. G. Martin.''

We shall not consider the objection made to the introduction of this memorandum, because the decision will be based upon other grounds. According to the undisputed testimony, the plaintiff had a lease and bond on certain mining claims, and had located several other claims in the vicinity of the property upon which he had a lease and bond, and the defendant, J. W. Nesmith, desiring to become interested in the property, took an option to purchase the same from the plaintiff, paying therefor at the time of entering into the agreement to take the option, the sum of two hundred dollars. It was mutually agreed between the parties that a written agreement would be prepared later to be signed by the parties. According to the plaintiff's testimony, he had located a claim for five hundred miner's inches of water for power and domestic purposes during the preceding month of August, 1899; and at the time Nesmith and he entered into the agreement for an option upon the mining property, the plaintiff located at another point on the Animas river, several thousand feet from the first location, another claim for five hundred miner's inches of water for the purpose of supplying water for power and domestic purposes to the Tom Moore group of mines. When Nesmith, on the 2nd of September, was making a preliminary inspection of the property, it was decided to change this second place of location of the head-gate to a point on the river several thousand feet distant, and farther from the first head-gate location. The plaintiff testified that he prepared his location certificate and wrote it upon a board, which he described, and placed it upon

the bank of the river at a place designated by Nesmith and a surveyor; that Nesmith and the surveyor said to him that it would be better to have the location of the water right in Nesmith's name, and that Nesmith agreed that he would protect Martin and hold the water right for him; that thereupon, the writing on the board was changed and the name of John W. Nesmith substituted for that of Samuel G. Martin, and the name of the J. W. Nesmith Ditch and Pipe Line substituted for that of the Tom Moore Ditch and Pipe Line.    Two witnesses for the plaintiff testified that they, sometime after the second of September, 1899, saw the location stake, and that it bore evidences of erasures, and they testified that the word J. W. Nesmith was written over the name Tom Moore. The plaintiff further testified that he recived the two hundred dollars on the second of September, and after the execution of the written contract for the purchase of the mining property, received the sum of four thousand dollars; that at the time he signed the written agreement he read it over, and, noticing that it contained no mention of the water right or pipe line, demanded of Nesmith that a provision to correspond with the verbal agreement they had entered into be inserted in the written contract; that Nesmith declined to do so, and stated to him that he expected to build a pipe line and that if he did not purchase the property under the terms of the option, he would sell the pipe line to the highest bidder.    Martin's testimony upon the subject appears in the abstract as follows:    "I asked him if he was going to sell and to whom he was going to sell, and he said, 'To the highest bidder.'    I asked him if he would deed it to anyone, and he said he would sell it to the highest bidder. I wanted to know what he intended to do.    I wanted to get an option on it if he intended to give anyone an option.    I never offered to buy it, but I talked with

Mr. Nesmith a good deal to find out what his intentions were." When recalled, Martin said: "On September 22, Mr. Nesmith and Mr. Dickson got out an agreement for me to sign. * * I took it to my attorney in Denver * * and then the discussion about the water right came up—about it being a verbal agreement; and he refused to put anything in about it. And in talking about the water right Nesmith got hot—seemed to be mad about it—and he said he wouldn't do anything and he would sell it to the man he could get the most money of, and that I had nothing to do with it. Mr. McNair told me it was a law-suit anyway, and maybe Mr. Nesmith would take the option. But I signed the contract as it was. After signing the contract I went to Mr. Nesmith, after the ranting was over about the water right, and asked him if he would not transfer it to me and give me an option on it, or if he would sell it to me if he turned down the option. He said no one had an option on it, he was holding it for speculation."

The plaintiff claims that although Nesmith refused to give any writing, that he agreed before the execution of the written contract to protect the water right and do whatever work was necessary to hold it. It is shown by the testimony that the defendant Nesmith did not purchase the property under the option; that he expended twelve or thirteen thousand dollars in the development of the property, and in addition thereto spent the sum of about thirteen thousand dollars in the building of the pipe line. At the time it is alleged that Nesmith agreed to protect the water right and turn it over to the plaintiff, the plaintiff had only an inchoate right to the use of five hundred inches of water from the Animas river. Nesmith and the surveyor who accompanied him at the time when the

water right was located testify positively that
Martin's name did not appear on the board; that no
writing was on the board at the time the location cer-
tificate was written upon it; that there was no era-
sure. And the surveyor testified that he wrote upon
the board a location certificate; that it was signed by
J. W. Nesmith and witnessed by him and by Martin.
Nesmith says that at no time did he ever have any
conversation with Martin in which he expressly or
impliedly agreed to locate a water right for him or
to build a pipe line and turn it over to him.

We are of opinion that the facts stated by the
plaintiff do not entitle him to recover and that any
preliminary agreement entered into between Martin
and Nesmith must be presumed to have been included
in the written agreement executed on the 22d of Sep-
tember. It is a familiar rule that extrinsic evidence
is not admissible either to contradict, add to, subtract
from, or vary the terms of a written contract. The
rule applies with greater force to all instruments
required by the statute of frauds to be in writing.

"All oral negotiations or stipulations between the
parties which preceded or accompanied the execution
of the instrument are to be regarded as merged in it,
and the latter is to be treated as the exclusive medium
of ascertaining the agreement to which the contract-
ors bound themselves."—*Randolph v. Helps*, 9 Colo.
29.

Moreover, it was a contract which, under the stat-
ute of frauds should be in writing, and while, under
some circumstances, parties by their conduct are
estopped to set up the statute of frauds, no such case
is presented by the record here. It is stated in the
case of *Whitsett v. Kershow*, 4 Colo. 423, that to estab-
lish a trust by parol evidence alone in order to take
the case out of the statute of frauds, the contract must

be established by clear, certain and conclusive proof, unequivocal in all its terms. "This branch of equity jurisdiction requires nice discrimination, and will not be exercised unless all the facts relied on to give relief are established beyond a reasonable doubt, and this even where the ground of relief is mistake."

The plaintiff insists that the pipe line should be regarded as improvements made under the option, and that it became his property because not removed within the time specified by the written contract. The plaintiff placed an entirely different construction upon the contract. He insisted that the alleged verbal agreement concerning the water right and pipe line should be incorporated in the written contract. He says that Nesmith denied there was such an agreement and refused to mention the pipe line in the instrument. According to plaintiff's testimony, Nesmith told him that he was building the pipe line for his own benefit, and that if the property was not purchased under the option, it would be sold to the highest bidder; that he afterwards signed the written contract, which contains no mention of the water right or pipe line, and that after he signed the contract he asked Nesmith for an option and that Nesmith again told him that he would sell to the highest bidder. A considerable portion of the pipe line is constructed through property held by the plaintiff under locations made about the time the agreement was entered into, the defendant understanding that the locations were to be made. Under these circumstances, we do not think the plaintiff should be heard to say that the pipe line became his property after the expiration of the time mentioned in the contract.

For these reasons, therefore, we must reverse the judgment.

*Reversed.*