[No. 5046.]
[No. 2610 C. A.]

Fox v. The Denargo Land Company.

1. **Brokers—Sales—Real Property—Reasonable Compensation.**

Where real property was placed with plaintiff to sell "upon such terms as might be agreed upon between defendant and the purchasers," defendant agreeing to pay plaintiff a commission on any such sales made, plaintiff did not show a performance of the contract by producing a person ready, able and willing to take an option on the property binding the defendant to convey at any time within seven months on the purchaser making the initial payment and executing notes secured by trust deeds for the balance, as the contract of employment contemplated the production of a person who would enter into a valid agreement to buy upon terms satisfactory to the owner.—P. 207.

2. **Brokers—Sales—Real Property—Ability to Purchase.**

In an action by a broker for commission for furnishing a buyer for real property where the owner refused to carry out the alleged contract of sale, an alleged purchaser testified that he had offered and was willing to take an option to purchase such property binding him to pay $50,000 in seven months and to execute notes secured by trust deeds for the balance, and to deduct any sales of such lands made in the interim from the purchase price; and he further testified that he expected to sell enough of the land before the option expired to pay off the entire cash payment. Held, that such evidence does not show that plaintiff had produced a purchaser financially able to comply with the terms of the agreement of employment, in accordance with the rule that, in such cases, before he can recover, the broker must show that he performed those acts which, according to the contract of his employment, it was necessary for him to perform in order to be entitled to the compensation agreed upon.—P. 208.

3. **Brokers—Sales—Real Property—Evidence—Oral Agreements Merged in Written Contract.**

Where the owner of certain lands was willing to give a prospective purchaser furnished by a broker the privilege of buying, and such purchaser was willing to take an option, it is to be presumed that they were negotiating for a valid option, that is for a written agreement, and hence either party would be at liberty to withdraw any oral proposition made in the meantime, and the owner could do so without becoming liable to the broker for his commission after the prospective purchaser failed to carry out the terms of the written option finally made; and in an action by the broker for his commission, proof of such oral agreements are inadmissible, as all negotiations or stipulations between parties preceding or accompanying the execution of a written instrument are to be regarded as merged in it, and the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves.—P. 210.

4. **Brokers—Sales—Real Property—Showing Purchaser Able to Buy.**

In an action by a broker against the owner of real property for commission for furnishing an alleged purchaser for the land, he is not entitled to recover in the absence of showing that such purchaser is able to buy.—P. 211.

5. **Brokers—Sales—Real Property—More than One Purchaser.**

Where a broker produced a purchaser who was proposing to buy the entire property for sale, the owner was justified in refusing to consider a proposition from another prospective purchaser, furnished by the broker, for a portion of the land, pending negotiations with the first; and although the pending deal was not consummated, the broker is not entitled to recover a commission based upon furnishing the second purchaser.—P. 211.

*Error to the District Court of Arapahoe County.*
*Hon. F. T. Johnson, Judge.*

Action by Mattie H. Fox against The Denargo Land Company. From a judgment for defendant, plaintiff brings error.                    *Affirmed.*

Mr. R. T. McNeal and Messrs. Wells, Thompson & Chiles, for plaintiff in error.

Messrs. Wolcott, Vaile & Waterman, for defendant in error.

Mr. Justice Steele delivered the opinion of the court:

The complaint alleges that the president of The Denargo Land Company ''placed with plaintiff for sale, upon such terms as might be agreed upon between defendant and the purchasers thereof, certain real estate'' situate in the then county of Arapahoe, and agreed to ''pay plaintiff a commission of five per cent. on any sale or sales she might make'' of any of the platted portion of the property, ''and as to the acre property, said defendant became liable to pay plaintiff a reasonable compensation for her services in finding a purchaser therefor.'' That she procured ''one I. B. Porter as a purchaser for all the remaining unsold portion of said land; that said Porter was ready, able and willing to buy the unsold portion of said land at and for the price fixed by the said defendant;'' that said Porter did agree to buy and said Hill, president of defendant, did agree to sell to the said I. B. Porter all the unsold portion of said land as aforesaid, for the price of six hundred thousand dollars. The second cause of action contains averments as to the employment and rate of commission as in the first cause of action, and further avers that she procured Bennett & Myers as purchasers for 1411 lots; that said Bennett & Myers were ready, able and willing to buy said lots and to pay for the same at a price and upon terms which had been indicated by defendant were satisfactory, but that said defendant had refused to treat with the said Bennett & Myers or sell them said lots, or any portion thereof. She prays for judgment on the first cause of action for thirty thousand dollars, and upon the second cause of action for sixteen thousand dollars; in all, the sum of forty-six thousand dollars.

The answer denies the allegations of the complaint. From a judgment of nonsuit the plaintiff took the case, by writ of error, to the court of appeals.

The testimony discloses that the plaintiff and the officers of the defendant had several conversations and some correspondence with reference to the sale of the property in question, and that she induced I. B. Porter to negotiate with the officers of the company, and that the negotiations resulted in the signing of a contract by the terms of which Porter had the privilege of buying the property within a certain specified time, but that Porter failed to make the initial payment required by the contract. It further appears that at one time during the negotiations Porter and the representatives of the company reached an agreement, and that Porter prepared a writing containing substantially all the terms of the agreement, but that when he presented it for signature, the officers of the company, although admitting that it was in accordance with the agreement of the previous meeting, declined to sign it; and after many other writings were submitted and rejected, the one mentioned herein was signed. The document prepared by Mr. Porter as containing the agreement is printed in the abstract, and provides that Porter, or his assigns, shall have the option to purchase the property at any time before June 30, 1889, for the sum of six hundred thousand dollars; fifty thousand, cash, to be paid at the time the purchasers agree to take the property, the balance to be paid in various sums, at various times, during a period of six years. He states that the paper was prepared during the month of November, 1888. This agreement, Porter says he was ready to sign, and able and willing to comply with its terms if it had been signed. This is the agreement upon which the plaintiff bases her first cause of action; and she claims that as the seller and

purchaser had agreed upon the terms of sale, and as the buyer was ready, able and willing to buy upon the terms agreed upon, she is entitled to her commission.

We are of opinion that the plaintiff did not earn her commission, and that the court did not err in granting a nonsuit. In stating her contract of employment, she alleges that the property of the defendant was "placed with plaintiff for sale, upon such terms as might be agreed upon between the defendant and the purchasers thereof," and that "the defendant agreed to pay her a commission of five per cent. upon any sale or sales which she might make;" and she alleges that I. B. Porter did agree to buy, and that the defendant did agree to sell to said I. B. Porter, the property in question for the sum of six hundred thousand dollars. A broker employed to make a sale of property is entitled to a commission if, through his efforts, a sale is consummated. In this case no sale was consummated, but the plaintiff says that the reason the sale was not made is because the owner refused to make the sale to a purchaser she had produced, who was ready, able and willing to take the property upon the terms and conditions agreed upon. Where a broker is employed to find a buyer for a specified price, and produces to the owner one who is ready, able and willing to buy upon the terms specified, and the owner refuses to convey, the broker is entitled to his commission; but here the broker did not produce a person who was ready, able and willing to buy. She produced a person who was ready, able and willing to take an option, merely, upon the property. that is, he was willing that the owner should bind itself to convey the property to him at any time within seven months, upon his making the initial payment and executing notes for the balance secured by deeds of trust. The plaintiff was

not damaged by the refusal of the defendant to sign a contract binding the company to accept the offer to buy the property unless she showed that, but for the fact of such refusal, a sale of the property would have been made upon the terms and conditions of the agreement. Mr. Porter states, speaking of the proposed contract and of his ability to perform: "I was at that time able and willing to carry out this contract if it had been signed at that time. I suppose I intended to do so. I was able and willing at the time this paper was presented to have carried out the terms of the contract stated in it. I could not state just what I intended to do, but I was acting in good faith in entering upon the negotiations. My impressions from memory are that I intended to handle the property. * * * I was willing to enter into a contract in accordance with this written memorandum. * '* * I was ready at the time this was presented to sign a contract expressing these terms and conditions. * * * I was ready, able and willing to comply with the contract, and intended to. * * * I was ready willing and able, and proposed to take the property under exhibit 2, and would not take it under exhibit 7, because, in the first place, the terms were different disadvantageously, and times and conditions had changed.''

This is all the testimony given by Mr. Porter concerning his ability to perform his part of the proposed agreement. It very clearly appears that it was not Mr. Porter's intention to buy the property except for the purpose of resale at an advanced price. The proposed contract contains these provisions: "And in case of sales made of any part of said lands during the life of said option, the proceeds of such sales shall be deducted from the purchase money to be paid by said Porter; and further, if said

Porter shall fail to purchase under this option, then he shall be allowed and paid a commission of five per cent. upon all sales made by him." And, in explaining the difference between the memorandum for a contract and the contract finally signed, Mr. Porter said: "Under the first arrangement I might have released and sold enough of that property to have paid off the entire cash payment before the sixty days expired, or the ninety, and in the latter I could not, which was very important."

The purpose Mr. Porter had in proposing the agreement is not material except as it may have a bearing in determining whether the plaintiff did or did not show by her testimony that she had produced a person financially able to comply with the terms of the agreement. It was said in the case *Coburn v. Seymour*, 32 Colo. 430: "While it is true there seems to be some conflict of authority on the question of whether or not it is necessary for the broker to prove the financial ability of the purchaser in those cases where the owner refuses to carry out the contract of sale, we are of opinion that the great weight of authority, and the well-considered cases on the subject, require that he make such proof, because he must show, before he is entitled to recover his commissions, that he performed those acts which, according to the contract of his employment, it was necessary for him to perform in order to become entitled to the compensation agreed upon."

Applying the foregoing rule to the facts of this case, the plaintiff cannot recover, because the proof fails to establish the financial ability of Mr. Porter to comply with the terms of the proposed contract. In fact, his testimony rather negatives the idea that he was himself financially able to perform the contract; but, on the contrary, that he relied upon his ability to make a sufficient number of sales during the

14

life of the option to enable him to make the first payment of fifty thousand dollars. As the contract provided that all sales made should be credited on the purchase price and be deducted from the first payment, his statement that he was able, was nothing but an expression of opinion on his part that he could have raised the sum of fifty thousand dollars by the 30th of June, 1889, with which to make the first payment. The agreement was made in November, 1888, and the payment of fifty thousand dollars was to have been made on or before June 30th, 1889; and to have submitted the question of his financial ability to make the payment at all times during the life of the option, upon his mere statement that he was able so to do, would be to permit the jury to find the fact upon the merest speculation. The plaintiff claims that the option agreement was satisfactory to the defendant, and that she is entitled to her commission because after the defendant had agreed to the terms of the option it refused to make the agreement in writing, and that if it had signed the agreement Porter would have taken the property within the prescribed time at the price agreed upon. We are of opinion that the contract of employment here, contemplated the production of a person who would enter into a valid agreement to buy upon terms satisfactory to the owner. Porter did not propose to enter into an agreement to buy, he sought to bind the owner to sell. But if we accept the plaintiff's contention as correct, she is not entitled to recover, for the reason that she cannot take advantage of the fact that Porter and the owner at one time during the negotiation made an oral agreement. The owner was willing to give Porter the privilege of buying, and Porter was willing to take an option; the parties were negotiating for the purpose of making a valid option —that is, a written agreement; and either party, it

seems to us, was at liberty to withdraw any proposition made during the negotiation, and the owner was at liberty to do so, and to repudiate any oral agreement made, without becoming liable to the broker. The presumption which applies to written contracts generally should apply here, and we must presume that in the contract finally executed between Porter and Hill all agreements and understandings are merged. Although the court did permit plaintiff to prove that during the negotiations an oral agreement was reached and that when reduced to writing the officers of the company refused to sign it, we think the court erred in this and should not have permitted such proof to be made. All oral negotiations or stipulations between the parties which preceded or accompanied the execution of the instrument are to be regarded as merged in it, and the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves.—*Randolph v. Helps,* 9 Colo. 29; *Nesmith v. Martin,* 32 Colo. 77.

If the plaintiff was not entitled to show a verbal understanding differing from the one finally entered into, she cannot of course recover, because Porter failed to make the initial payment required by the written agreement.

The plaintiff should not recover upon her second cause of action. In the first place, her proposed purchasers, Bennett & Myers, are not shown to have been able to buy; in the second place, the defendant was in good faith dealing with a customer she had brought, and it was entirely proper and altogether honorable for the officers to refuse to consider their proposition until after negotiations with Porter, who was proposing to buy the entire property, were concluded. We are of opinion that the plaintiff has wholly failed to establish the allegations of the com-

plaint, and that the judgment of nonsuit was proper, and that the judgment should be affirmed.

CHIEF JUSTICE GABBERT and Mr. JUSTICE CAMPBELL concur.