[No. 5340.]
[No. 2986 C. A.]

## THE KING POWDER COMPANY v. DILLON.

1. **Brokers—Commissions—When Entitled To.**

   In the absence of a contract to the contrary, a broker is entitled to commissions when he has produced a customer ready, able and willing to purchase upon the terms and price stipulated by the principal, and is the procuring cause of the sale, although consummation of the sale be prevented by failure or refusal of the principal to proceed therewith through defect of title or other cause, or by the latter's wrongful act.—P. 323.

2. **Practice in Civil Actions—Duty of Court—Nonsuit—When Proper.**

It is the duty of the court to grant a nonsuit when plaintiff's evidence does not warrant a verdict in his favor.—P. 323.

3. **Practice in Civil - Actions—Brokers—Proof—Requisites.**

In an action for a broker's commissions on sales made by defendant, his principal, he is bound to show that he had an exclusive agency with a right to commissions whether the sales were made by him, or directly or indirectly by defendant; or that he had a customer ready, able and willing to buy, and was the procuring cause of the sale; or, having such customer, he was prevented from making the sale by defendant's wrongful act.—P. 324.

4. **Principal and Agent—Contracts—Exclusive Contracts—Contract Construed.**

A contract reciting that plaintiff became defendant's agent for the sale of powder at a certain city and throughout the state, did not give him an exclusive agency, especially since defendant refused to insert the word "exclusive" in the contract; and, plaintiff not having the exclusive contract, defendant could contract with another to sell in the same state on such terms as it deemed fit.—P. 325.

5. **Brokers—Compensation—Sales Through Others.**

A broker, in the absence of an exclusive agency, by simply soliciting trade resulting in no definite business arrangements or binding contracts, does not become entitled to commissions on sales made by his principal, or other brokers, to those solicited.—P. 326.

6. **Principal and Agent—Compensation of Agent.**

Defendant made a "consignment" contract with plaintiff, whereby plaintiff was to act as its agent for the sale of powder in a state for a 5 per cent. commission on his sales, defendant bearing the expense of maintaining magazines and assuming risks of loss by fire and theft, and plaintiff not guaranteeing accounts; and later made a "cash" contract with a company whereby it was to receive 10 per cent. commission for acting as defendant's agent, and 2 per cent. discount for cash, the schedule of prices at which the agents might sell being the same in each case, the company agent assuming all loss by fire and theft, bearing storage expenses, and guaranteeing all accounts. Held, that such facts do not show that the company agent was authorized to sell at a lower price than plaintiff, it not appearing that the former sold to plaintiff's customers at a price lower than the latter could sell.—P. 327.

*Appeal from the District Court of the City and County of Denver.*

*Hon. E. E. Armour, Judge.*

Action by Thomas F. Dillon, Jr., against The King Powder Company. From a judgment for plaintiff, defendant appeals.      *Reversed.*

Mr. Burton B. Tuttle and Messrs. Cranston, Pitkin & Moore, for appellant.

Mr. Milton Smith and Mr. Charles R. Brock, for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

This is an action to recover commissions plaintiff claims are due him, under a written contract which he made with the defendant company.

From a judgment in his favor is this appeal.

The action was commenced by filing a complaint November 13, 1900, which was in one count based upon an alleged exclusive agency for the sale of defendant's powder in the state of Colorado.

June 15, 1903, two days before the commencement of the trial, by leave of court, plaintiff filed an amended complaint which was in two counts; the first based upon an alleged exclusive agency, as in the original complaint, and averred that by reason of the sales of powder made directly by defendant or its agents, within the state of Colorado, plaintiff was entitled to $12,012.50 as commissions upon the sales of such powder; the second count alleged that on or before the 6th day of October, 1899, plaintiff was appointed agent of the defendant, throughout the state of Colorado, for the sale of defendant's powder, and that by the terms of said contract plaintiff was to receive 5 per cent. commission upon all sales of powder throughout the state of Colorado; that in the

fall of 1899 certain contracting firms had undertaken to do the grading and construction of a certain line of railroad; that plaintiff entered into negotiations with such contractors for the sale to them of the powder of the defendant, and sold to one of the firms of contractors, some time during the month of November, 1899, about 1,200 kegs of such powder; that the Baxter & Kearns Mercantile Company, a copartnership consisting of George W. Baxter, George T. Kearns, R. Clough and William Anderson, desired to make arrangements with plaintiff to handle the powder of defendant, for the purpose of using the same in the construction of the above mentioned railroad, and entered into negotiations with plaintiff for that purpose, all of which was well known to the defendant, and that other contracting firms, viz., Orman & Crook, Carlile, Dittmer & Weitbrec, Clough & Anderson (the latter being members of the Baxter & Kearns Mercantile Company) intended to use the powder of defendant company in their work upon said railroad; that William Anderson, a member of the firm of Clough & Anderson, and also of the Baxter & Kearns Mercantile Company, entered into negotiations and completed an arrangement with the defendant company, whereby defendant company was to sell and furnish directly to such contracting firms, or through the Mercantile Company, powder to be used in the construction of such railroad, at a sum less than the price which said defendant company had authorized and instructed plaintiff, as its agent, to sell and dispose of the same; that under such arrangement the defendant company, while the plaintiff was still its agent, between the 6th day of October, 1899, and the 6th day of October, 1900, sold directly to said Mercantile Company, or through such company to the contractors above named, 155,000 kegs of powder; that the de-

fendant company well knew that plaintiff was nego-
tiating with the Mercantile Company and the con-
tractors for the sale of its powder; that by virtue
of the contract existing between plaintiff and the
defendant, plaintiff became and was entitled to a
commission upon the sales of such powder in the sum
of $12,012.50.

The defendant, by its answer, put in issue every
material allegation of both counts of the complaint,
and set forth *in haec verba* the written contract en-
tered into by and between plaintiff and defendant on
the 6th day of October, 1899, the first paragraph of
which, so far as pertinent, is as follows:

"By this agreement, dated at Denver, Colorado,
this 6th day of October, 1899, Thomas F. Dillon, Jr.,
of Denver, Colorado, becomes agent of The King
Powder Company, of Cincinnati, Ohio, for the sale
of its black powder at Denver, Colorado, and through-
out Colorado."

The above paragraph of the written contract is
the only expression contained in the contract which
in any manner defines the territorial character or
extent of the agency of plaintiff.

Upon the trial plaintiff took the position that
the contract was ambiguous and uncertain, and that
oral testimony was admissible to explain the ambig-
uity and uncertainty.

Over the objection of defendant, a mass of evi-
dence, both oral and documentary, was introduced by
plaintiff, in his effort to prove that he was defend-
ant's exclusive agent in the state of Colorado.

This evidence consisted of correspondence be-
tween the parties preceding the execution of the con-
tract, statements of the officers and agents of the com-
pany preceding and following the execution of the
contract, testified to by plaintiff and another witness
for plaintiff, and a mass of letters and telegrams ex-

changed between the parties after the contract had been executed. This testimony was allowed to go to the jury upon the theory, as stated by the court, that it had a tendency to prove a contemporaneous construction placed upon the contract, by the parties themselves.

Plaintiff testified to efforts made by him to sell the defendant's powder to the Mercantile Company, and the contractors, which evidence will be hereinafter referred to.

It also appeared in evidence that in the latter part of December, 1899, Anderson, of the contracting firm of Clough & Anderson, and of the Baxter & Kearns Mercantile Company, went to Cincinnati, Ohio, and entered into negotiations with the defendant company which ultimately resulted in a contract between the defendant company and the Mercantile Company, by which the Mercantile Company was appointed agent of the powder company for the sale of its powder throughout the state of Colorado. Plaintiff had nothing to do with making this contract.

The contract entered into by the defendant with the Mercantile Company was known as a "cash" contract, under which the powder company sold to the Mercantile Company its powder and charged the schedule price of the same to the Mercantile Company, allowing the company 10 per cent. commission for acting as its agent and 2 per cent. discount for cash, or within ten days, the Mercantile Company being at its own expense for the storage of the powder and guaranteeing all accounts for powder sold by it.

The contract entered into between plaintiff and defendant was what is known as a "consignment" contract, by the terms of which the powder company, at its own expense, constructed and maintained magazines for the storage of its powder in and near Den-

ver, the powder remaining its property until the same was sold; it assumed all risks for loss by fire and theft, and for the collection of accounts made by its agent Dillon, no guarantee for the payment of such accounts by Dillon being contained therein, and a bond in the sum of $5,000.00 being given by Dillon to protect the powder company under the contract; Dillon being allowed 5 per cent. commission upon all sales of powder made by him.

It will thus be seen that the contracts entered into by the defendant with plaintiff and with the Mercantile Company were radically different in their terms.

The defendant company admitted that it sold to the Baxter & Kearns Mercantile Company, between the 6th of October, 1899, and the 6th of October, 1900, being the time covered by Dillon's agency contract, upon which suit was brought, 32,200 kegs of powder at $1.55 per keg, the 5 per cent. commission on which amounted to $2,495.50.

Upon the close of plaintiff's testimony, defendant moved a nonsuit, upon the ground, first, that the contract between plaintiff and defendant, which had been introduced in evidence, showed conclusively upon its face that plaintiff did not have an exclusive agency for the sale of defendant's powder within the state of Colorado; and, second, that under the second count, the powder which was sold by the defendant to the Baxter & Kearns Mercantile Company was sold without the instrumentality or agency of plaintiff in any manner, and that plaintiff was not entitled to recover anything from the defendant.

This motion was granted as to the first count and overruled as to the second count.

The defendant introduced no evidence.

The verdict of the jury was in favor of plaintiff in the sum of $2,495.50, being 5 per cent. commission

upon the sale of 32,200 kegs of powder at $1.55 per keg.

Many errors are assigned upon the rulings of the court during the trial, upon the introduction and rejection of evidence, the instructions given to the jury, and requested instructions refused.

In the view which we take of this case, we believe that the same should be disposed of upon the errors assigned upon the ruling of the court refusing to grant a nonsuit upon the second count.

There are certain rules and legal principles which may be considered well settled in this state, governing the rights of a broker to commissions.

In the absence of a contract to the contrary, some of those principles may be stated as follows:

The broker will be entitled to commissions when he has produced a customer ready, able and willing to purchase upon the terms and at the price stipulated by the principal. The broker must be the efficient agent or procuring cause of the sale. The broker will be entitled to his commissions when he has produced a customer ready, able and willing to purchase upon the terms and at the price stipulated, although consummation of the sale be prevented by failure or refusal of the principal to proceed therewith, through defect of title, or for other cause, and the broker may recover commissions when the sale is prevented by the wrongful act of the principal.— *Babcock v. Merritt,* 1 Colo. App. 84; *Cole v. Thornburg,* 4 Colo. App. 95; *Colburn v. Seymour,* 32 Colo. 430, and cases cited; *Fox v. Denargo Land Co.,* 37 Colo. 203; *Ross v. Smiley,* 18 Colo. App. 204.

It is well settled that it is the duty of the court to grant a nonsuit when plaintiff's evidence does not warrant a verdict in his favor.

Counsel for appellee in his brief says that plaintiff does not claim in the second count an exclusive

agency, but alleges a contract by which he was to receive 5 per cent. commission on sales of black powder in Colorado, and alleges facts by which it appears that plaintiff was prevented from earning such commission by the wrongful acts of the company in interfering with and selling to customers of plaintiff at a less rate than he was authorized to sell at, thereby preventing plaintiff from selling the powder which otherwise he would have sold.

It will be noticed that in the above statement of appellee's position, the commission to which plaintiff claims he was entitled was not limited to the sales of black powder in Colorado made by plaintiff, but included all sales of black powder, and that this is the position of plaintiff here is manifest by the strenuous efforts made by counsel in his brief to sustain the contention that notwithstanding the ruling of the court below, to the effect that the contract did not grant an exclusive agency, still counsel claims such contract did grant an exclusive agency.

This conclusion is borne out by this allegation of plaintiff in the second count of his complaint:

"That by the terms of such agreement and contract, the plaintiff was to receive 5 per cent. commission upon *all sales* of black or blasting powder * * * throughout the state of Colorado."

As we read the authorities and apply them to the facts in this case, in order to recover it was incumbent upon plaintiff to prove:

1.   That he was acting under a contract which gave him an exclusive agency, with a right to commissions whether the sales were made by himself, or directly or indirectly by the defendant.

2.   He must have had a customer ready, able and willing to buy, and must have been the procuring cause of the sale; or, having such customer, he

must have been prevented from making the sale by the wrongful act of the defendant.

1. Without hesitation we agree with the ruling of the trial court to the effect that the written contract relied upon by plaintiff in this case did not confer upon him an exclusive agency; and we may say, further, that the evidence introduced by plaintiff himself establishes the fact that plaintiff must have known at the time he entered into the contract that he did not gain thereby an exclusive agency, for the reason that during negotiations which led up to the making of the contract, he insisted that the word "exclusive" be inserted in the contract, which was refused by the company, and the contract as written above was entered into.

2. There is nothing whatever in the record to show that plaintiff had anything whatever to do with the making of the contract between the powder company and the Baxter & Kearns Mercantile Company, and having concluded that the contract between plaintiff and defendant was not an exclusive agency contract, there was nothing in the relation between plaintiff and defendant which prevented defendant from entering into a contract with the Baxter & Kearns Mercantile Company, upon such terms as it might see fit. Conceding that the sales made by the Baxter & Kearns Mercantile Company to the railroad contractors, were made directly by the defendant company to the contractors, the evidence shows beyond controversy that the Baxter & Kearns Mercantile Company, prior to the time it entered into the contract with the powder company, had been selling the contractors Laflin & Rand powder, so that if the plaintiff had been negotiating with the contractors for the sale of the defendant's powder to them, or had made sales of such powder to them, the possibility of plaintiff's making sales to the contractors

was foreclosed by the fact that the Mercantile Company had secured this trade and the plaintiff had lost the same; and this, as before stated, before the Mercantile Company had entered into a contract with the powder company.

While the complaint alleges that plaintiff was negotiating with the contractors for a sale of defendant's powder, and the plaintiff so testified, other testimony introduced by plaintiff shows beyond question that all that plaintiff did was to solicit the trade, but had secured no definite or binding promises or agreements from any of the contractors that they would buy their powder of him, nor had he sold to any of the contractors, excepting Clough & Anderson, any of defendant's powder.

To hold that an agent by simply soliciting trade which results in no definite business arrangements, no binding contracts, entitles him to commissions on sales made by his principal or other agents, to the person or persons solicited, in the absence of an exclusive agency, would be to place it in the power of an agent to effectually prevent his principal from ever selling any goods to any persons desiring to purchase the same or who were in the trade, by the agent simply addressing circulars or personal letters or making personal calls upon such persons. We know of no principle of law which would sustain any such position.

From a very careful examination of the record in this case we are of the opinion that there is nothing whatever in the evidence to sustain the contention that plaintiff was in any sense of the word the efficient agent or procuring cause which resulted in the sale of any of the powder upon which he now claims a commission.

Plaintiff alleges, in his complaint, that under the contract made between the powder company and the

Mercantile Company, the Mercantile Company was authorized to sell powder at a price less than the price which the defendant company authorized plaintiff to sell for.

The contract between the defendant company and the Mercantile Company, introduced in evidence, contains a schedule of prices at which the Mercantile Company was authorized to sell the powder of the defendant, which schedule is identical with the schedule of prices contained in the contract between the defendant and the plaintiff; and the undisputed evidence of all the witnesses who testified upon this point, is to the effect that no powder whatever—not a single keg of powder—was sold by the Mercantile Company to any one of the contractors to whom it sold powder, or to any one else, at less than the schedule prices, so that we are forced to the conclusion that this contention of plaintiff cannot be maintained.

But, it is said by counsel for appellee that the fact that the powder company allowed the Mercantile Company a commission of 10 per cent. as its agent and 2 per cent. discount for cash or within ten days, which facts are undisputed, supports his contention in this behalf.

When we take into consideration the fact that under the contract with the Mercantile Company, the defendant incurred no risk on account of loss by fire or theft, and no expense on account of storage, and that all sales were guaranteed, all of which risks and expenses were assumed by the defendant under the contract with plaintiff, and that one contract was a *sales* contract and the other contract a *consignment* contract, we are led to believe that the difference in commissions was amply justified by the difference in the character of the contracts, and in the absence of any testimony to show that any sales were made

to any of the persons whom plaintiff claims as his customers at a less price than the schedule of prices at which plaintiff was authorized to sell powder, we conclude that this contention of plaintiff is untenable.

From a careful review of all the testimony in the case we believe that plaintiff utterly failed to prove a cause of action, under either the first or second count of the complaint, and that it was the duty of the court to have granted the motion for a nonsuit, for which reason the judgment will be reversed.

*Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concurring.