[No. 7760]

·PERKINS v. RUSSELL.

1. BROKER—*Right to Commissions*—If the broker, employed to find a purchaser for his client's property, produces one ready, able and willing to purchase upon terms accepted by the client, he is entitled to his commission, even though, through the fault of the client, no sale is effected.

2. TRIAL—*Pleading and Evidence—Variance*—Defendant who goes through the trial of the cause without suggesting a variance between the complaint and the evidence offered to sustain it, will not be heard to make the objection as the ground of a motion for a new trial.

3. APPEALS—*Harmless Error*—Where the result must have been the same whether the cause were tried upon the plaintiff's theory of the pleadings, or a different theory afterwards urged by defendant, a variance alleged between the pleadings and the evidence is immaterial.

*Error to Delta District Court.*—Hon. SPRIGG SHACKLEFORD, Judge.

Mr. MILTON R. WELCH, Mr. R. M. LOGAN, Messrs. GOUDY & TWITCHELL, for plaintiff in error.

Mr. L. J. STARK, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Fred Russell, defendant in error, sued H. E. Perkins, plaintiff in error, to recover a commission which he claims to have earned through securing a purchaser, on terms satisfactory to Perkins, for certain property belonging to the latter.

The complaint charges that Perkins, claiming to be the owner of six hundred acres of land near Madera in Gunnison county, also about 10,000 ewes, 6,000 sheep, 250 bucks and 8 horses, together with improvements, chattels and machinery on the land, did on September 15th, 1909, employ plaintiff Russell to secure a purchaser for same at the price of $78,000, and agreed to pay him five per cent commission on that amount when he should procure such purchaser; that under the agreement Russell secured G. H. Moffett, Dallas Osborne and W. H. McCutchen, who, at Denver, in September, 1909, agreed with Perkins to buy his said property and pay him $78,000 in cash therefor, provided the property was as represented by defendant; that Moffett was to examine the property; that he did examine it and was then and there ready, able and willing to pay Perkins such sum of $78,000, but that Perkins failed to carry out the contract of sale, wherefore Russell claimed he was entitled to the commission.

Perkins, in his answer, admits that he represented to Russell that he was the owner of the property mentioned, but denies all other allegations. And for a second and further defense alleges, in substance, that in July, 1909, he authorized Russell to sell his entire herd of sheep at $6.00 per head, the horses, chattels, machinery and land to be thrown in, provided Russell could do so at once, or within a short time, and to allow Russell a com

mission of five per cent of the sale price in case a sale was made; that Russell failed to secure such purchaser, and that in August, 1909, Perkins informed Russell that if the sale was made thereafter full allowance should be made for the expense of running the sheep and for the increased value by reason of the growth of wool, and for any addition of bucks that might be made to the flock, and for the increased value of the flock per head by reason of the sale of old ewes, wethers, inferior sheep culled therefrom of less value than $6.00 per head, and that any deal Russell might make was to be modified and adjusted and the price fixed by Perkins. The replication denies all new matter set up in the answer. Plaintiff had judgment for $4,286.00, being five per centum on $78,000, with interest thereon from the date that sum was due to the time of the verdict, to review which the defendant brings the case here on error.

It appears undisputed that Perkins desired to sell his property, and placed it with Russell for that purpose; that the latter introduced Moffett, Osborne and McCutchen to Perkins as prospective purchasers. On August 11th, 1909, Russell wrote Perkins, stating that he had a purchaser for his property, requesting him to come to Denver, to which Perkins answered that he would be in Denver in about ten days and would come and see him. Soon thereafter Perkins did go to Denver and there saw Russell, who then introduced him to Moffett. These two talked over the sheep business and matter of sale in the presence of Russell, and agreed to meet McCutchen in relation thereto on the following afternoon. At this time an agreement was made between Russell and Perkins relative to the commission to be paid, the former stating that he thought six or seven per cent of the purchase price would be right, and the latter, objecting to that figure, agreed to pay him five per cent of the sale price, upon any deal made on terms satis-

factory to him. Up to this time no sale had resulted from the services of Russell. He had produced a prospective purchaser, but the dealings as shown by the record were too general and indefinite to warrant a conclusion that Moffett was then a purchaser ready, able and willing to buy. Upon a meeting with McCutchen the following day the parties talked the matter over generally, and Perkins refused an option then requested, and the only outcome of that meeting was that Moffett and Osborne agreed to go to the ranch and look over the property. On October 18th next thereafter they did so. At that time, according to the testimony of defendant, they went over the proposition together at Madera, about four miles from the sheep camp, where a sketch of the range, lambing ground and land was drawn. A portion of the testimony of Moffett, fully supported by that of Osborne, witnesses for plaintiff, as to what passed between the parties at that time, is as follows:

"Q. When did you next see him? A. I seen him at his ranch on the eighteenth of the following month; we had talked it up and decided with Mr. Osborne that him and I would go over and look the proposition over, as he was in the sheep business and perfectly familiar with it;  *  *  *  we come over together and we come to Sapinero; we come here first and he wasn't here, then we went to Sapinero the following day, and we stayed all night there, and then got horses the next morning and rode up to his ranch about twelve miles, and we found him dipping sheep, but on the way up we met a great many of his herds and we asked the herders whose sheep they were; they said 'Perkins', and we looked them over and seen they were fine sheep, as good as we expected, if not better; we could see the kind of range he had, and we went up to where we found him and we found him dipping; it was before noon; he took us up to dinner and we had dinner, and after noon we looked around and

looked his sheep over all afternoon and ate supper; I
think we ate supper, yes, I am pretty sure we did; then
he took us after dark down to Madera, a little station
about four miles further from there; we talked on the
deal on the way down, and didn't come to any under-
standing, and the next morning he said he would go down
to Madera; he come down to Madera and we then went
at the proposition; I tried to Jew him down; I offered to
give him six dollars a head for all the sheep that he had
if he would deduct out a few six year olds he had, and
sell to me for the market price, which he said he wouldn't
do; he said he wouldn't take less than six dollars a head
right through for the thirteen thousand, or seventy-eight
thousand dollars for the whole outfit; I says 'Knowing
what my partner's feelings are,' or I decided that it was
satisfactory to us, but I tried to beat him down; I says
'Mr. Osborne, if this is satisfactory to you I am satis-
fied to give this gentleman seventy-eight thousand dol-
lars'; he says 'Mr. Moffett, it is all right with me, per-
fectly satisfactory'; I says 'Mr. Perkins, we will con-
cede, and we will give you seventy-eight thousand dol-
lars for your outfit'; he says 'All right'; I reached my
hand in my pocket, took out my check book and I says
'Mr. Perkins, let me write you a check on the First
National Bank of Denver'; he says 'No, my word is as
good as my bond,' and he says 'I know you gentlemen
mean it'; he says 'I don't need the money, and you
needn't bother'; well I says 'What is the matter with
you coming down to Denver with us and straighten this
matter up'; he says 'I would, only I have got a lot of men
over there that I have got to see to'; he says 'I will not
be later than next Thursday or Friday, I will come down
and close the deal up with you'; we bid him good day and
left without any more talk to amount to anything dealing
on the case.''

Perkins did not go to Denver as agreed because, by

his own testimony, he was too busy. A few days later Moffett telephoned him, asking why he had not come to Denver, or when he would come, but he was still too busy, and could not say just when he would do so. About two weeks after the meeting at Madera, Perkins wrote Moffett a letter, stating an entirely new basis for the proposed purchase and sale. That letter is as follows:

"Delta, Colo., 30th Oct. 09.

Mr. G. L. Moffett, Denver, Colo.

Dear Sir: Since talking to you over the phone, I find that my business is so lined up that I cannot possibly get away at present, and if you really want to do business you had better jump on the cars and come over here. The time which has lapsed since I first quoted these sheep to you has incurred an expenditure of some fifteen hundred dollars per month, for six weeks, and in the meantime the wool has been growing which is all in your favor, in fact there is six months' growth of wool on the sheep now, for which I get no return. Apart from that I have shipped out the wether lambs and the old ewes, about 2800 head in all, which has added materially in increasing the value of the flock, besides throwing in $1600. worth of fresh bucks.

These various items come to several thousand dollars, and while I don't wish to go back on my word as regards the original price, my business has gone on as usual, which has incurred the aforesaid expenditure, and in conclusion, if you think you can make good said expenditure, you can come over here, and I will try to close out the stock to you at the original price, plus the cost of the various items mentioned.

Yours truly,

H. E. Perkins."

Beyond peradventure, this letter itself shows that some understanding had been reached between the par-

.ties and a definite price fixed, for Perkins says, "I don't wish to go back on my word as regards the original price." The testimony further shows that shortly after the receipt of this letter Moffett again visited Perkins at the ranch, and made a flat offer of $80,000 for the property, which Perkins declined, demanding at that time $83,000 as the purchase price. It will be noted that the agreement of purchase and sale was not reached until October 19th, at which time Moffett and Osborne desired to have Perkins accompany them at once to Denver to close the deal, and he promised to be there in two or three days. All of the outlay and expense to which Perkins refers in his letter of October 30th had been incurred prior to October 19th, and were of necessity eliminated from consideration by the express agreement then made. All delay after that date is shown by the evidence to have been occasioned through the failure of Perkins to go to Denver as agreed.

The contention of defendant is that the contract with Russell, if any, for commission was specifically conditioned upon his actually effecting a sale. The trial court, following well defined principles of law, instructed, in substance, that if the plaintiff secured a purchaser who was ready, able and willing to purchase the property upon terms and conditions which defendant Perkins accepted and agreed to, then Russell's part of the contract was complete and he was entitled to recover the agreed commission, although no sale was in fact concluded, if the failure to effect one was the fault of the principal. Upon a careful reading of the instructions given we are satisfied that, under the facts of this case, the law was fairly stated. The instructions do not substantially vary from, nor are they inconsistent with, the pleadings and proof. In any event, we are so strongly impressed from the whole record with Russell's right to recover, that we think it safe to declare that Perkins

could not, upon any theory, have been prejudiced by the instructions given. The testimony clearly establishes that Russell was employed to represent Perkins in a sale of this property; that the contract was for a commission of five per cent of the sale price, when effected upon terms satisfactory to Perkins; that a sale was in fact agreed upon for $78,000, and that Russell was the efficient agent or procuring cause of the agreement of sale; that the prospective purchasers were abundantly able, ready and willing to pay the purchase price in cash; and that Perkins withdrew from this agreement, and declined to carry it out, presumably because he thought he saw an opportunity to swell the price. Upon all the authorities which we have examined, under conditions such as are above set out, the broker had earned his commission. *Babcock v. Merritt,* 1 Colo. App. 84, 27 Pac. 882; *Cole v. Thornburg,* 4 Colo. App. 95, 34 Pac. 1013; *Anderson v. Smythe,* 1 Colo. App. 253, 28 Pac. 478; *Colburn v. Seymour,* 32 Colo. 430, 76 Pac. 1058, 2 Ann. Cas. 182; *Fox v. Denargo Land Co.,* 37 Colo. 207, 86 Pac. 344; *Ross v. Smiley,* 18 Colo App. 204, 70 Pac. 766; and *King Powder Co. v. Dillon,* 42 Colo. 316, 96 Pac. 439.

The evidence clearly establishes that the minds of the parties met in agreement of purchase and sale. While details are in the main absent, still it is plain that there was an offer to pay $78,000 by Moffett and associates, and an acceptance thereof by Perkins, for the property in question. It is also manifest from the record that the sale would have been completed had Perkins kept his promise to meet the would-be purchasers in Denver. Indeed, it may fairly be presumed that but for his failure to keep his appointment and formally close the transaction, an execution of the contract would have resulted. It is fundamental that one cannot defeat the right of his broker under contract for commission, where the latter has produced a purchaser ready, able and willing to buy

on terms satisfactory to the principal, and to which he has agreed, simply by thereafter backing out and refusing to execute the contract. *Finnerty et al v. Fritz,* 5 Colo. 174; *Spalding v. Saltiel,* 18 Colo. 86, 31 Pac. 486; *Millett v. Barth,* 18 Colo. 112, 31 Pac. 769; and 19 Cyc. 247.

It is claimed on behalf of defendant that there is a variance between the allegations of the complaint and the proof, since the testimony seems to establish that Russell's commission was to be five per cent of the sale price, the sale to be effected upon terms satisfactory to Perkins. Technically this may be true. However, the record fails to show that any objection for this reason was made to any testimony offered to establish the contract. There was no motion on this ground to strike out the testimony offered to establish the contract. Indeed, the attention of the trial court was not directed to this point. There was no motion for a non-suit, nor was there any motion for a directed verdict. Neither was there any specific objection for this reason to the instructions. The proposition is suggested for the first time in the motion for a new trial, and came too late. Had the objection been urged in apt time plaintiff would have had opportunity to amend his complaint, which could have readily been done, to conform to the proof. A defendant will not be permitted to try a case upon a given theory, remaining silent upon the question of variance between the proof and the allegations of the complaint, and after he has been defeated, then for the first time urge such objection. *Colorado Mortgage Co. v. Rees,* 21 Colo. 435, 42 Pac. 42; *Hurlburt v. Dusenberry,* 26 Colo. 247, 57 Pac. 860; *Tew v. Powar,* 37 Colo. 292, 86 Pac. 342; *Libby, McNeill & Libby v. Scherman,* 146 Ill. 540, 34 N. E. 801, 37 Am. St. Rep. 191; and 31 Cyc. 717.

In any event, it clearly appears that the defendant

could not have been misled by such variance, nor does it appear that it did or could have prejudiced his rights. The proofs show, and the jury must have so found, that Perkins agreed to sell this property to purchasers produced by Russell, who were ready, able and willing to take it at the price of $78,000, and when that agreement was established Russell was entitled to five per cent commission thereon, as the failure to consummate the deal is shown to have been due entirely to the conduct of Perkins, and this is the precise sum which Russell sought to recover by his complaint. The supposed variance between the contract as alleged and as established by the proofs is therefore plainly immaterial, because upon either theory, the amount of recovery would have been the same. In *Wells v. Crawford et al*, 23 Colo App. 103, 127 Pac. 914, the complaint alleged an agreed compensation, while the proofs tended to establish a reasonable value for the service, and the court held that such variance must be disregarded, if it appears that defendant was not misled thereby and substantial justice resulted. *Buckingham v. Harris,* 10 Colo. 455, 15 Pac. 817; and *Salazar v. Taylor,* 18 Colo. 538, 33 Pac. 369.

The jury, guided by a substantially correct statement of the law, certainly at least by instructions which could not have misled them, found, upon abundant evidence, the facts against the defendant. His legal rights were fully protected, and the finding should not be disturbed. Plaintiff was clearly entitled to recover his commission, substantial justice has been done, and the judgment is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE WHITE concur.